IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHICAGO MALE MEDICAL CLINIC,
LLC,

                    Plaintiff,            Case No. 12 C 5542

         v.                               Hon. Harry D. Leinenweber

ULTIMATE MANAGEMENT, INC. and
JEFFREY E. FROMBERG,

                    Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court are (1) Defendants' Motion to Dismiss and/or Strike portions of Plaintiff's First Amended Complaint; (2) Defendants' Motion for Leave to File a Surreply in Opposition to Summary Judgment; (3) Plaintiff's Motion for Summary Judgment; and (4) Defendants' Motion to Transfer Venue pursuant 28 U.S.C. § 1404(a).  For the reasons stated herein, Defendants' Motion to Dismiss and/or Strike is granted in part and denied in part; Defendants' Motion for Leave to File a Surreply is granted; Plaintiff's Motion for Summary Judgment is denied; and Defendants' Motion to Transfer Venue is granted.

## I.  BACKGROUND

Plaintiff, Chicago Male Medical Clinic, LLC, (the "CMMC" or "Plaintiff") is an Illinois limited liability company that treats men with erectile dysfunction as well as other related medical issues. Defendant Ultimate Management, Inc., ("UMI") is a California

corporation that licenses and oversees the operation of a national affiliation of medical clinics (including CMMC) that collectively do business under the name "National Male Medical Clinics," ("NMMC"). Defendant Jeffrey Fromberg ("Fromberg") is a director and officer of UMI.

On or about November 10, 2010, Plaintiff and UMI entered into a Continuing Consultation and Compensation Agreement ("the Agreement"). Under the Agreement, UMI agreed to assist Plaintiff in setting up a medical clinic and agreed to consult with Plaintiff on how to operate and market the medical clinic effectively. The terms of the Agreement were that Plaintiff would pay UMI a $300,000 set up fee along with a percentage of daily gross revenue in exchange for UMI's assistance in the marketing of the clinic, the training of employees, and the assistance with various operational tasks.

Plaintiff alleges that the Agreement was a franchise offering. Plaintiff claims that because the Agreement was a franchise agreement, UMI was required to abide by the Illinois Franchise Disclosure Act (the "IFDA"). UMI disputes this fact and argues that the Agreement merely established a consulting relationship between the parties.

On August 15, 2011, Plaintiff filed its initial complaint against UMI and Fromberg (collectively, the "Defendants") in the Circuit Court of Cook County. On October 24, 2011, UMI filed a Counterclaim against Plaintiff alleging breach of contract. On April 11, 2012, the Circuit Court of Cook County granted Plaintiff leave to

amend its Complaint.  In the First Amended Complaint, Plaintiff specifically claims that (1) Defendants violated Section 5 of the IFDA (Count I); (2) Defendants violated Section 6 IFDA (Count II); (3) Defendants are liable for common law fraud (Count III); and (4) Defendants violated the Illinois Consumer Fraud & Deceptive Business Practices Act (the "ICFA") (Count IV).

On May 22, 2012, UMI filed a Motion to Dismiss Plaintiff's First Amended Complaint.  Less than a month later, while at a deposition, UMI discovered that complete diversity existed between the parties. Shortly thereafter, UMI filed a Notice of Removal which transferred the case from the Circuit Court of Cook County to this Court.

Currently before the Court are (1) UMI's Motion to Dismiss and/or Strike Portions of Plaintiff's First Amended Complaint; (2) Defendants' Motion to File a Surreply in Opposition to Plaintiff's Motion for Summary Judgment; (3) Plaintiff's Motion for Summary Judgment with respect to Counts I and II; and (4) Defendants' Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a).

## II.  <u>ANALYSIS</u>

### A.  UMI'S Motion to Dismiss and/or Strike

On July 19, 2012, UMI filed a Motion to Dismiss and/or Strike Portions of Plaintiff's First Amended Complaint.  In it, UMI requests that the Court (1) dismiss counts II, III and IV of Plaintiff's Complaint; (2) strike paragraph 16 of Plaintiff's Complaint; and (3) strike Plaintiff's prayer for punitive damages for all counts in the Complaint.  UMI also requests that the Court dismiss Counts II, III,

and IV with prejudice.  It alternatively asks that if the Court permits Plaintiff to amend these claims, that the Court strike paragraph 28 and paragraph 37 of the Complaint.

### 1. *Dismissal of Counts II, III, IV*

UMI argues that Counts II, III, and IV of Plaintiff's Complaint should be dismissed because Plaintiff failed to plead with the requisite particularity adequately.  UMI alleges that all three of these claims involve allegations of fraud, therefore requiring Plaintiff to satisfy the more stringent pleading standards of Federal Rule of Civil Procedure 9(b).  Plaintiff does not dispute the applicability of Rule 9(b), but instead argues that its pleading is adequate.

On a Motion to Dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded facts in the Complaint and draws all inferences in Plaintiff's favor*. Cole v. Milwaukee Area Tech. Coll. Dist*., 634 F.3d 901, 903 (7th Cir. 2011).  A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  Plaintiffs generally need not allege "detailed factual allegations," but must offer more than conclusions or "a formulaic recitation of the elements of the cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

However, when pleading fraud in federal court, Rule 9(b) imposes a higher pleading standard than that required under Rule 8.  *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011).  Rule 9(b) provides:  "[i]n

- 4 -

alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). A complaint alleging fraud must provide "the who, what, when, where, and how" of the circumstances constituting fraud. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

Additionally, "Rule 9(b)'s standard can apply to counts based on fraudulent conduct, not just counts of fraud." *Telefonix, Inc. v. Response Eng'g, Inc.*, No. 12-C-4362, 2012 U.S. Dist. LEXIS 161756 at *7-8 (N.D. Ill. Nov. 13, 2012). The Seventh Circuit has opined that when a plaintiff alleges violations under Section 6 of the IFDA, the pleading "must include the same elements required to state a claim of common law fraud." *Derson Group, Ltd. v. Right Management Consultants, Inc.*, 683 F.Supp. 1224, 1228 (N.D. Ill. 1988) citing *Proimos v. Fair Automotive Repair, Inc.*, 808 F.2d 1273, 1276 (7th Cir. 1987). Similarly, the Seventh Circuit instructs that when a claim under the ICFA alleges "fraudulent activity" then the "dictates of Rule 9(b) apply." *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust*, 631 F.3d at 446.

Here, Plaintiff's claim under the ICFA is premised on "deception, fraud, false pretense, false promise misrepresentation or concealment." [Dkt. 1-3 at 14]. As such, the Court finds the heightened pleading standards under Rule 9(b) apply to Counts II, III, and IV.

*a.  Count II*

Count II of Plaintiff's Complaint alleges that UMI violated Section 6 of the IFDA by "inducing CMMC [Plaintiff] to invest in their clinic and to pay the substantial fees charged by Ultimate [UMI] based on lies and deception . . ."  Pl.'s First Amend. Compl. at 8; [Dkt. 1-3 at 9].  Plaintiff bases its claim on the fact that UMI's representation of having valuable, proprietary information was false, and Defendants' representation that other clinics were profitable was also false.  In the Complaint, Plaintiff states that these were material misrepresentations which were intended to induce Plaintiff's reliance, and proximately caused Plaintiff to sustain significant monetary losses.  UMI argues this pleading lacks the requisite particularity under Rule 9(b) because Plaintiff fails to specify what specific representations were allegedly false and fails to plead that UMI knew the representations were false at the time it made them.

Section 6 of the Illinois Franchise Disclosure Act is entitled "fraudulent practices."  It provides:

> In connection with the offer and sale of any franchise made in this State, it is unlawful for any person, directly or indirectly, to:
>
> > (a)  employ any device, scheme or artifice to defraud.
> >
> > (b)  make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statement made in the light of the circumstances under which they are made, not misleading.

- 6 -

> (c)  engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

815 ILL. COMP. STAT. 705/6.

As previously mentioned, in order to state a claim under this Section of the IFDA a plaintiff must plead the elements of common law fraud. *See Proimos*, 808 F.2d at 1276 (finding "the critical portion of the Act [IFDA] is modeled on the SEC's Rule 10b-5, which has been understood to contain the same elements . . . [that] are part of fraud."). In Illinois, in order to state a valid fraud claim a plaintiff must allege that (1) the defendant made a false statement of material fact; (2) the defendant knew or believed the material fact was false at the time the defendant made the statement; (3) the defendant made the statement with the intent to induce action by the plaintiff; (4) the defendant did induce plaintiff's action in reliance on the truthfulness of the statement; and (5) the defendant injured the plaintiff as result of the plaintiff's reliance. *Athey Products Corp. v. Harris Bank Roselle*, 89 F.3d 430, 434 (7th Cir. 1996).

UMI alleges that the first and second elements are missing from Count II of Plaintiff's Complaint. The Court agrees.

Count II of the Complaint begins by reciting Section 6 of the IFDA and then proceeds to claim that UMI violated Section 6 by inducing Plaintiff to invest in one of its companies "through lies and deception." [Dkt. 1-3 at 9.]. Plaintiff further alleges that two of those "lies" were UMI's representation of possessing

- 7 -

proprietary information and UMI's "unsubstantiated pro forma projection." [Dkt. 1-3 ¶¶ 19(a)-(b)]. In the Complaint, Plaintiff fails to allege with any degree of specificity what proprietary information its claim is based upon and fails to plead what specific information in the *pro forma* projections was unsubstantiated. Moreover, Plaintiff completely fails to allege that at the time UMI made these representations it knew them to be false. Thus, the Court finds Plaintiff's pleading with respect to Count II insufficient for the purposes of Rule 9(b) and dismisses Count II without prejudice. *See Hoffman v. Nationwide Mut. Ins.*, No. 10-CV-3841, 2011 WL 3158708, at *5-6 (N.D. Ill. July 26, 2011) (dismissing a plaintiff's fraud claims because the plaintiff merely contended that the material misrepresentations made by defendants were contained in the business plans and *pro formas* that the defendant gave plaintiff); *see also Shair v. Qatar Islamic Bank*, No. 08-CV-1060, 2009 WL 691249, at *5-6 (N.D. Ill. Mar. 16, 2009) (dismissing a plaintiff's fraud claim because the plaintiff failed to allege what exact statements the defendant made that were false and failed to allege that defendant knew them to be false at the time it made them).

   *b. Count III Common Law Fraud*

   Count III of Plaintiff's complaint attempts to allege common law fraud. Interestingly, unlike Count II, in Count III Plaintiff makes the requisite allegation that UMI knew its misrepresentations were false. However, in doing so, Plaintiff merely states that UMI's misrepresentations and omissions "were known by Ultimate [UMI] to be

false." Pl.'s First Amend. Compl. at 11 [Dkt. 1-3 at 12]. Plaintiff fails to make any allegation regarding how or why UMI knew that its representations were false. The Court finds this conclusory assertion also fails to satisfy the heightened requirements of Rule 9(b). *See Greer v. Advanced Equities, Inc.*, 683 F.Supp.2d 761, 768 (N.D. Ill. 2010) (dismissing plaintiff's fraud claim because the claimant merely alleged that the defendants "knew or should have known that the representations and omissions that were made were untrue.")

As further support, similar to Count II, the Court finds the Plaintiff's allegations regarding what the material misrepresentations are that form the basis of the fraud claim to be insufficiently pled. The Court also points out that in Count III, Plaintiff alleges that the material misrepresentations for its common law fraud claim are based on the allegations of paragraph 18 in the Complaint. However, paragraph 18 is the merely the language of Section 6 of the IFDA. The Court presumes that this is a typographical error and Plaintiff intended this portion of Count III to reference paragraph 19 in Count II. Pl.'s First Amend. Compl. at 9 [Dkt. 1-3 at 10]. However, the Court refuses to predict what Plaintiff intends to plead. *See Stanard v. Nygren*, 658 F.3d 792, 798 (7th Cir. 2011) (affirming a district court's dismissal of a complaint because the complaint's "grammatical, syntactical, and typographical errors contributed to an overall sense of unintelligibility.")

Notwithstanding the error, the Court finds the claimed misrepresentations in paragraph 19 fall short of the pleading requirements under Rule 9(b). In order to plead a misrepresentation sufficiently for common law fraud the "complaint must specify the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to plaintiff." *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990). The Court finds Plaintiff fails to set forth these details with the requisite particularity and dismisses Count III without prejudice.

### c. Count IV ICFA

Count IV of Plaintiff's Complaint alleges that UMI violated the ICFA because UMI sold franchises in the State of Illinois and made false "financial performance representations in violation of the applicable regulations promulgated by the FTC." Pl.'s First Am. Compl. at 13; [Dkt. 1-3 at 14.]. UMI argues that Plaintiff fails to plead sufficiently that Plaintiff, a corporation, has standing as a consumer to bring this claim, and alternatively argues that even if Plaintiff has standing, the Complaint fails to meet the heightened pleading requirements under Rule 9(b).

"The ICFA is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competitions and other unfair and deceptive business practices." *Hickman v. Wells Fargo Bank, N.A.*, 683 F.Supp.2d 779, 793-94 (N.D. Ill. 2010). In order to state a claim

- 10 -

under the ICFA the plaintiff must allege "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving a trade or commerce." *Id.* In addition to this, "a private cause of action under the ICFA requires a showing of proximate causation." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514-15 (7th Cir. 2006).

UMI claims that Plaintiff fails to establish standing because a business only has standing to sue under the ICFA if the business alleges that the misconduct is directed at the market in general.

Plaintiff argues that UMI's assertion is without merit since Plaintiff is a consumer under the ICFA.  The Court disagrees.

Section (e) of the ICFA provides the definition of a "consumer" for the purposes of the ICFA.  It provides:

> (e)  The term "consumer" means any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household.

815 Ill. Comp. Stat. 505/1(e) 2007).

Plaintiff fails to allege that it purchased merchandise (which pursuant to 815 Ill. Comp. Stat. 505/1(b) includes intangible rights) that it used for its personal use.  Moreover, the Court cannot fathom any way that consulting or franchise services for a business could be used for personal use as the statute requires.  Because of this, the Court rejects Plaintiff's argument that it has standing as a consumer

under the ICFA.  *See Williams Electronic Games v. Garrity*, 366 F.3d 569, 579 (7th Cir. 2004) (holding that for the purposes of the ICFA the plaintiff must be a consumer pursuant to the statute and reasoning that "the business purchaser is [generally] not a consumer because his only use of the purchased product is as an input into the making of a product that he sells, in contrast to the individual who consumes a six-pack of beer for pleasure or nutrition rather than incorporating the beer into a product . . . ").  Thus, the Court finds Plaintiff fails to allege that it has standing to support a claim under the ICFA.  The Court also notes that Plaintiff here again fails to satisfy Rule 9(b) with respect to this claim.

Therefore, because the Court does not find Plaintiff to be a consumer under the ICFA, the Court dismisses Count IV of Plaintiff's Complaint with prejudice.

### d. Dismissal of Counts II and III Without Prejudice

UMI requests that the Court dismiss Counts II, III, and IV with prejudice.  UMI argues such a dismissal is appropriate because even if Plaintiff sufficiently pleads its claims, the claims will still fail under Illinois law because Plaintiff's claims are based upon the fact that UMI made false and misleading *pro forma* projections and representations as to future income, are thus not actionable in Illinois.  Plaintiff responds that its claims are not merely based on representations as to future income, but instead are based upon "projection[s] represented as being based on past performance."  Pl.'s Resp. in Opp. to Defs.' Mot. to Dismiss at 4.

The Court agrees with UMI pursuant to Count IV for the reasons stated above.  However, the Court, cognizant of the fact that a dismissal with prejudice is in effect an adjudication on the merits, dismisses Counts II and III of Plaintiff's Complaint without prejudice and grants Plaintiff leave to amend the complaint. *See El-Bey v. Village of South Holland,* No. 11-C-4949, 2012 WL 1658301 at *9 (N.D. Ill. May 11, 2012) (stating "[i]n deciding whether to dismiss with prejudice (and foreclose any attempts to amend the complaint) this Court is mindful that the Court should "freely give leave [to amend] when justice so requires.") citing FED. R. CIV. P. 15(a)(3).

The Court directs Plaintiff to be sufficiently specific if it chooses to re-plead these claims, and urges Plaintiff to familiarize itself with the relevant Illinois law.  Accordingly, the Court grants Plaintiff thirty (30) days from the entry of this Order to amend its Complaint.

### 2.  *Paragraph 16 & UMI's Motion to Strike*

In its Motion to Dismiss, UMI also requests that the Court strike paragraph 16 of Plaintiff's Complaint because the allegations contained therein are improper and irrelevant.  Paragraph 16 states, ". . . Defendants have engaged in a deliberate fraud on the court, as Defendants have denied that they are selling franchises, but on their web page (which they updated after this case was filed), Defendants state . . ."  Pl.'s First Amend. Compl. at 6; [Dkt. 1-3 at 7].  The paragraph continues by including a screen shot of a website purporting to advertise franchises.

- 13 -

UMI claims that paragraph 16 should be stricken because it is irrelevant. UMI argues that because the allegations concern events that occurred after the date Plaintiff filed its initial Complaint and after the November 10, 2010 Agreement between the parties it has no bearing on the issues in this litigation. UMI further avers that this paragraph is improper because Plaintiff implies that the webpage is UMI's, when in actuality it is a webpage of one of UMI's affiliates. UMI also contends that Plaintiff's accusation of UMI engaging in a deliberate fraud on the Court is untrue, inappropriate, and irrelevant.

Federal Rule of Civil Procedure 12(f) governs motions to strike and allows a party to strike portions of a pleading that are redundant, immaterial, impertinent, or scandalous. FED. R. CIV. P. 12(f). However, "[m]atter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation." *Capitol Indem. Corp. v. Tranel Developments*, 144 F.R.D. 346, 347 (N.D. Ill. 1992) citing 2A MOORE'S FEDERAL PRACTICE ¶ 12.21[2] (2d ed. 1992). Moreover, in order for the court to grant a motion to strike, the movant must show that "the allegations being challenged are so unrelated to plaintiff's claim as to be void of merit and unworthy of any consideration and that the allegations are unduly prejudicial." *Cumis Ins. Soc. v. Peters*, 983 F.Supp. 787, 797 (N.D. Ill. 1997). "Prejudice results where the challenged allegation has the effect of confusing the issues or is so

- 14 -

lengthy and complex that it places an undue burden on the responding party." *Id.*

The Court agrees with UMI with respect to Plaintiff's allegation that UMI has engaged in a deliberate fraud on the Court.  The Court finds this statement unduly prejudicial and irrelevant to Plaintiff's stated claims in its Complaint.  Accordingly, the Court grants UMI's Motion to Strike with respect to the statement that UMI "engaged in a deliberate fraud on the Court."  Pl.'s First Amend. Comp. at 6.

The Court does not find, however, that UMI has alleged sufficient prejudice to warrant the Court to strike paragraph 16 in its entirety.  While the Court recognizes that relevant time period in this action largely concerns November 10, 2010, (the date the Agreement was entered into), and the time period immediately preceding the execution of the Agreement, the Court does not find the remaining allegations in paragraph 16 completely irrelevant to the narrative of this dispute.  Accordingly, UMI's Motion to Strike the remainder of paragraph 16 is denied.

Notwithstanding this ruling, the Court suggests that if Plaintiff chooses to amend its Complaint with respect to Counts II, III, and IV, it should qualify its allegations in paragraph 16 by providing the Court the information it submitted in its response to UMI's Motion.  Namely, the Court suggests that paragraph 16 should include the fact that UMI is now selling franchises "through an affiliate it has created known [as] NMMC Franchising, Inc.," rather

than implying that UMI is itself currently selling franchises.  *See*
Pl.'s Resp. in Opp. to Defs.' Mot. to Dismiss at 10.

### 3.   *UMI's Motion to Strike Plaintiff's Punitive Damages Claims*

UMI also moves to strike all of the paragraphs in Plaintiff's
Complaint that seek punitive damages.  UMI argues that Plaintiff's
prayer for punitive damages with respect to Count I and Count II
should be stricken because the IFDA does not permit punitive damages.
UMI argues the remaining claims for punitive damages should be
stricken because Plaintiff fails to allege that UMI acted with actual
malice.

### a.   *Punitive Damages Prayer in Count I & Count II*

"Punitive damages are not available for breach of contract or
under the IFDA."  *Zeidler v. A&W Restaurants, Inc.*, No. 99-C-2591,
2000 U.S. Dist. LEXIS at *7-8 (N.D. Ill. Jan. 25, 2000).  Plaintiff
fails to address this in its response to UMI's Motion and instead
merely contends that because UMI committed purposeful fraud, its
punitive damage claims are appropriate.  The Court does not agree and
accordingly strikes Plaintiff's punitive damages prayer in Count I.
(The Court has already dismissed Count II without prejudice.  If
Plaintiff chooses to re-plead this Count, Plaintiff should
familiarize itself with the damages available under the IFDA.)  *See*
*id.* (striking a plaintiff's prayer for punitive damages in its IFDA
claim).

*b.  Punitive Damages Prayer in Counts III and Counts IV*

Because the Court has already dismissed Count III without prejudice and Count IV with prejudice, UMI's request to strike the punitive damages paragraphs contained therein is moot.  However, if Plaintiff chooses to re-plead Count III, the Court urges Plaintiff to examine Illinois law to determine when it is appropriate to seek punitive damages.  *See Hauge v. Fid. Guar. Life Ins. Co.*, No. 91-C-20033, 1991 WL 352533 at *2 (N.D. Ill. Oct. 3, 1991).

### 4.  *UMI's Motion to Strike Paragraph 28 & Paragraph 37*

In its motion, UMI requests that if the Court permits Plaintiff to amend its Complaint, that the Court strike paragraphs 28 and 37. Paragraph 28 states that UMI's misrepresentations were intentional and "as part of a larger scheme" where UMI similarly defrauded other investors in various cities, including, "Dallas, Texas, Las Vegas, Nevada, and Nashville, Tennessee."  Pl.'s First Am. Compl. at 12. [Dkt. 1-13 at 13].  Paragraph 37 states that UMI's conduct was willful and intentional and that UMI has "engaged in a pattern of conduct" with Plaintiff and "additional franchises in other states." *Id.* at 14; [Dkt. 1-3 at 15].  UMI alleges that the Court should strike both paragraphs because Plaintiff attempts to bolster its other conclusory allegations by pleading that UMI defrauded businesses in other states.  UMI's Mot. to Dismiss and/or Strike at 14, n.6.  UMI, however, fails to establish that these allegations are unduly prejudicial. As such, the Court declines to strike paragraphs 28 and 37.  *See Cumis Ins. Soc., Inc.*, 983 F.Supp. 787 at 799

- 17 -

(declining to strike paragraphs from a complaint because the defendants failed to show that the allegations were unduly prejudicial).

### B. Plaintiff's Motion for Summary Judgment with Respect to Count I and Count II

On August 2, 2012, Plaintiff filed a Motion for Summary Judgment under Federal Rule of Civil Procedure 56(g), requesting that the Court find UMI liable for Count I and Count II of Plaintiff's Complaint. In its response, UMI argued that Plaintiff improperly moved under Rule 56(g) because "Rule 56(g) only comes into play when a court denies a Rule 56(a) motion – a motion that CMMC chose not to file." Def.'s Memo in Opp. to CMMC's Mot. Pursuant to Rule 56(g) for Summ. J. at 1 (emphasis in original). Recognizing its error, on October 25, 2012, Plaintiff replied to UMI's response and appropriately moved under Rule 56(a) for partial summary judgment. At a status hearing on November 6, 2012, the parties agreed to treat Plaintiff's original Motion for Summary Judgment under Rule 56(g) as a summary judgment motion under Rule 56(a). [*See* Dkt. 37]. On November 18, 2012, Defendants filed a Motion requesting leave to file a surreply brief in opposition to Plaintiff's Motion. In light of the unusual progression of the briefing with respect to Plaintiff's summary judgment motion, the Court grants Defendants' Motion for Leave to File a Surreply. *See Gordon v. Degelmann*, No. 92–C–6891, 1993 WL 286470, at *2 (N.D. Ill. July 28, 1993).

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  If the moving party satisfies its burden, the non-movant must present facts to show a genuine dispute exists to avoid summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  The Court construes all facts and draws all reasonable inferences in favor of the non-moving party. *Ricci v. DeStefano*, 129 S.Ct. 2658, 2677 (2009).  To establish a genuine issue of fact, the non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." *Sarver v. Experian Info. Sys.*, 390 F.3d 969, 970 (7th Cir. 2004).  If a party asserts that a fact cannot be, or is genuinely disputed, it must support that assertion with citations to materials in the record.  FED. R. CIV. P. 56(c)(1).  Such cited materials must be served and filed.  Loc. R. 56.1.  A court need only consider cited materials, but it is within the court's discretion to consider the entire record.  FED. R. CIV. P. 56(c)(3).  If a party fails to support an assertion, the court may consider the fact undisputed, and grant summary judgment if the record supports it, or issue any other appropriate order.  FED. R. CIV. P. 56(e).

Plaintiff asserts that it is entitled to summary judgment with respect to Counts I and II because the Agreement between Plaintiff and UMI was a franchise agreement.  Plaintiff further contends that it is entitled to summary judgment with respect to Count II because UMI gave Plaintiff a *pro forma* projection that failed to provide the

dates from which the data was derived, thereby constituting a material omission in violation of Section 6 of the IFDA.

In light of the Court's prior dismissal of Count II, the Court denies Plaintiff's Motion for Summary Judgment with respect to Count II.  Therefore, the Court only considers whether Plaintiff is entitled to summary judgment with respect to Count I.

### 1.  *Local Rule 56.1 and Plaintiff's Failure to Respond to UMI's Rule 56.1 Statements of Material Facts*

Pursuant to Local Rule 56.1, UMI included with its response to Plaintiff's summary judgment motion, a response to Plaintiff's 56.1 Statement of Material Facts [Dkt. 27], as well as its own 56.1 Statement of Additional Facts [Dkt. 26].  In its reply brief, Plaintiff failed to include a response to UMI's Statement of Additional Facts.

Local Rule 56.1(a)(3) instructs that a party "moving for summary judgment must provide a statement of material facts, which the moving party asserts contains no genuine factual dispute." *Aukstuolis v. Harrah's Ill. Corp.*, No. 99-C-3593, 2002 WL 31006128 at *2 (N.D. Ill. Sept. 5, 2002).  Then, the opposing party must respond to each paragraph by either admitting or denying the allegations and specifically citing to supporting materials.  After responding to the moving party's statements of fact, opposing party may also choose to "file a statement of additional facts that would defeat summary judgment, using the same form of numbered paragraphs with supporting citations." *Id.* "All material facts set forth in the statement

- 20 -

required of the moving party will be deemed admitted unless controverted by the statement of the opposing party." *Id.* citing L.R. 56.1(b)(3)(C). Similarly, all material facts properly supported in the opposing party's Rule 56.1(b)(3)(B) statement "will be deemed admitted unless controverted by the (reply) statement of the moving party." L.R. 56.1(a). If a party fails to support a statement with a citation to the record, it is equivalent to an admission of the other party's factual assertions. *Garrison v. Burke*, 165 F.3d 565, 567 (7th Cir. 1999). It is within the Court's discretion to either insist on strict compliance of the local rules or overlook transgressions. *Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011).

Here, while Plaintiff attempted to correct its error in moving for summary judgment under the inappropriate subsection of Rule 56, in doing so, Plaintiff neglected to abide by the Local Rule in its reply brief. The Court finds Plaintiff's lack of response to UMI's 56.1 Statements of Additional Facts confusing since Plaintiff indicated an understanding of the local rules in its initial motion which included an appropriately supported 56.1 statement of Facts. [Dkt. 15-1].

Despite the fact that the Court could strictly enforce the Local Rule and dispose of Plaintiff's summary judgment motion by taking Plaintiff's lack of response as an admission to all those facts which UMI alleged, the Court will compare Plaintiff's initial 56.1 Statement of Facts with UMI's 56.1 Statement of Additional Facts to

determine whether any disputed issues of material fact exist with respect to Count I.

### 2. *Franchise Agreement*

In its Motion, Plaintiff claims it is entitled to summary judgment with respect to Count I because the Agreement between Plaintiff and UMI was a franchise agreement. Plaintiff claims that the Agreement between UMI and Plaintiff (1) prescribed or suggested a marketing plan; (2) gave Plaintiff the right to use the name NMMC which included a trademark logo that Defendant Fromberg registered; and (3) required Plaintiff to pay UMI a substantial fee. Plaintiff argues that these facts establish a franchise agreement. Plaintiff contends it is entitled to summary judgment with respect to Count I since UMI failed to register its franchise as is required by Section 5 of the IFDA.

UMI disagrees. It argues that the Agreement was not a franchise agreement, but instead established a consulting relationship between the parties. UMI specifically disputes the fact that it prescribed a marketing plan that Plaintiff was required to implement. Rather, UMI claims that it simply offered its knowledge as part of the consulting arrangement between the parties. UMI further disputes that the Agreement between the parties contemplated Plaintiff's ability to use any NMMC trademark. While UMI concedes that one of its representatives, Mark Edelstein, testified at a deposition that it was his understanding that the Agreement provided Plaintiff the right to use the NMMC trademark, UMI argues that Edelstein's

testimony was incorrect. [See Dkt. 26; Ex. 9, Vol. II. Tab. 5 Edelstein Dep., p. 21:04-09]. UMI supports this by pointing to the content of the Agreement which neglects to mention that Plaintiff was permitted to use any trademark. UMI provides added support with an affidavit from Defendant Fromberg, who swears that UMI does not even possess any trademarks.

"A franchise is a set of contracts." *Al's Serv. Ctr. v. BP Products N. Am., Inc.*, 599 F.3d 720, 722 (7th Cir. 2010). Specifically, a franchise consists of a written or oral agreement under which: "(1) the franchisee "is granted the right to engage in the business of offering, selling or distributing goods or services, under a marketing plan or system prescribed or suggested in substantial part by a franchisor"; (2) the operation of the franchisee's business is "substantially associated with the franchisor's trademark," and (3) the franchisee is "required to pay a franchise fee of $500 or more." *Peter v. Stone Park Enterprises, L.L.C.*, No. 98-C-1160, 1999 WL 543210 at *6 (N.D. Ill. July 23, 1999) citing 815 ILL. COMP. STAT. 705/3. A franchise exists only if all three statutory elements are present. *Id.*

The Court finds a disputed fact exists as to whether the Agreement between the parties is a franchise agreement. Because a franchisee must be associated with the franchisor's trademark in order for a franchise to exist, the Court finds Fromberg's affidavit persuasive. UMI's Local R. 56.1(b)(3)(C) Statement of Additional

Facts at 6; [Dkt. 26; Page Id #1964].  The Court therefore denies Plaintiff's Motion for Summary Judgment with respect to Count I.

### C.  UMI's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a)

On November 2, 2012, Defendants filed a Motion to Transfer Venue from this district to the Central District of California pursuant to 28 U.S.C. § 1404(a).  Defendants argue that the Central District of California is the more appropriate venue in this case because of the private interests of Defendant Fromberg and because of public interests.  Plaintiff opposes UMI's motion.  It argues that the motion should be denied because transferring the case to California would inflict financial and legal prejudice on Plaintiff. Alternatively, Plaintiff requests that the Court sever the case against Defendant Fromberg and Defendant UMI if the Court grants UMI's motion.

"Recognizing that what is convenient for one litigant may not be convenient for the other, the Supreme Court has taught that section 1404(a) "is intended to place discretion in the district court to adjudicate motions for transfer according to [a] ' . . . case-by-case consideration of convenience and fairness.'"  *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977 (7th Cir. 2010) citing *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).  The Court may transfer a case under Section 1404(a) if the moving party shows "(1) venue is proper in this district; (2) venue is proper in the transferee district; (3) the

transferee district is more convenient for both the parties and witnesses; and (4) transfer would serve the interest of justice." *Moore v. Motor Coach Industries, Inc.*, 487 F.Supp.2d 1003, 1006 (N.D. Ill. 2007).  "Section 1404(a) does not indicate the relative weight to afford to each of these factors; this is left to the discretion of the district court." *Amorose v. C.H. Robinson Worldwide, Inc.*, 521 F.Supp.2d 731, 734 (N.D. Ill. 2007).

The first two elements have been satisfied in this case.  First, venue is proper in this forum.  Second, jurisdiction and venue are proper in the Central District of California because the Central District of California can exercise subject matter jurisdiction over this lawsuit based on diversity of the citizenship, as well as personal jurisdiction over UMI and Fromberg since both reside in the Central District of California.  Hence, the Court's inquiry must focus on the third and fourth elements – whether a transfer will "satisf[y] both the private and public interests at stake." *Aramark Mgmt. Servs. L.P. v. Martha's Vineyard Hosp., Inc.*, No. 03-CV-1642, 2003 WL 21476091 at *2 (N.D. Ill. June 23, 2003).

### 1.  *Private Interests*

Private interests address the convenience of the parties.  When weighting the private interests, the Court examines (1) the plaintiff's forum choice; (2) the situs of material events; (3) the ease of access to evidence; (4) the convenience to witnesses; and (5) the convenience to parties.  *Id.*

*a. Plaintiff's Choice of Forum*

It is undisputed that Plaintiff's forum choice was Illinois. While it is true that the courts show a strong preference for conducting litigation in plaintiff's forum choice, it is not dispositive. *Q Sales & Leasing, LLC v. Quilt Protection, Inc.*, No. 01-C-1993, 2002 WL 1732418 (N.D.Ill. July 26, 2002). As such, this factor weighs in Plaintiff's favor.

*b. Situs of Material Events*

Defendants argue that the majority of the events relevant to this litigation took place in California. Specifically, Defendants argue that the Agreement was entered into in California and Defendant Fromberg provided his consultation to Plaintiff from California. Defendants also point out that California is the location where Fromberg supposedly made the *pro forma* projections that Plaintiff alleges were false.

Plaintiff seems to argue that because it is an Illinois limited liability company and because the Agreement was for the purpose of operating a men's clinic in Illinois, that this should be considered to be a factor weighing in favor of the case remaining in the Northern District of Illinois. However, the majority of Plaintiff's claims allege fraudulent misrepresentations that, as Defendants state, occurred in California. As such, the Court finds that this factor weighs in favor of transfer.

### c.  *Access to Sources of Proof*

Defendants aver that all of the documents that relate to this cause of action have already been produced and therefore make this factor neutral when determining whether transfer is appropriate. Plaintiff argues that if the case is transferred to California, this will force Plaintiff to take "several more depositions and substantially increase the parties' costs."  Pl.'s Opp. to Defs.' Sect. 1404(a) Mot. to Change Venue at 12.  The Court, however, does not find Plaintiff's argument convincing.  Plaintiff admits that it has only taken one deposition in the case.  Plaintiff argues, however, that there are other potentially relevant witnesses in Illinois that Plaintiff may need to call in rebuttal and if the Court transfers the case to California, then Plaintiff will be forced to take these witnesses' depositions.  While the Court acknowledges that it is entirely within Plaintiff's discretion to depose as many or as few witnesses as it chooses, the Court does not find it plausible that transferring a case from one district to another would *require* Plaintiff to depose additional witnesses.  Therefore, with respect to this element, the Court finds that either party can easily bring to the district those documents that are not physically located there. *See Hanley v. Omarc*, Inc., 6 F.Supp.2d 770, 775 (N.D. Ill. 1998). Thus, this factor weighs neither in favor of transfer nor retention.

### d.  *Convenience of the Witnesses*

Defendants argue that California is a more appropriate forum for this litigation because the majority of its witnesses reside in

California, Nevada, or Arizona.  Defendants further allege that when
Plaintiff responded to UMI's interrogatories, Plaintiff identified
twelve people that could have "knowledge of facts that support or
refute the allegations contained in the Complaint . . ." but only
three of those twelve individuals reside in Illinois.  Def.'s Memo.
of Law in Supp. of Mot. to Transfer Venue Pursuant to 1404(a) at 9.
In response, Plaintiff claims there are a handful of other witnesses
who reside in Illinois other than those mentioned in UMI's motion
whose testimony "might be needed."  Pl.'s Opp. to Defs.'
Section 1404(a) Mot. to Change Venue at 13.

        "The convenience of witnesses is often viewed as the most
important factor in the transfer balance."  *Rose v. Franchetti*, 713
F.Supp. 1203, 1214 (N.D. Ill. 1989).  When determining whether a
particular venue is more convenient for the witnesses, the Court
should not end its inquiry on which party produces a longer witness
list.  *Chemical Waste Management v. Sims*, 870 F.Supp. 870, 876 (N.D.
Ill. 1994).  Rather, the court should examine the nature and quality
of the witnesses' testimony with respect to the issues of the case.
*Vandeveld v. Christoph*, 877 F.Supp. 1160, 1168 (N.D. Ill. 1995).

        Plaintiff claims that it only needs the testimony of Todd
Wheatcraft, and one defense witness, such as UMI's corporate
representative Todd Edelstein, to establish that UMI violated the
IFDA.  Mr. Wheatcraft resides in Illinois.  Mr. Edelstein resides in
California.  In its Motion, Defendants identify a number of potential
witnesses who live on the West Coast and argue that because there are

more potential witnesses who reside in California than in Illinois, transfer is appropriate.  However, Defendants fail to demonstrate that the testimony of any of these potential witnesses is pertinent or necessary to the underlying issues in this case.  As such, the Court finds this factor neutral.

e.  *Convenience of the Parties*

Plaintiff is a limited liability company that resides in the Northern District of Illinois.  UMI is a California corporation that resides in the Central District of California.  Defendant Fromberg is an individual officer, director, and shareholder of UMI, who also resides in the Central District of California.  Defendants spend a significant portion of their Motion to Transfer arguing that Fromberg's heart condition and ill health constitute an exceptional circumstance that tip the scales in favor of transfer.  As support, Defendants included in their Motion a declaration from Fromberg's cardiologist, Dr. Lester Padilla.  Dr. Padilla states that Mr. Fromberg suffers from serious heart conditions and currently is awaiting "the availability of a suitable replacement heart" from Cedar Sinai Hospital in Los Angeles, California.  Defs.' Memo of Law in Supp. of Mot. to Transfer Venue Pursuant to 28 U.S.C. § 1404(a); Ex. 3 at 1.  Dr. Padilla also states that Fromberg should not travel in any location beyond 3 1/2 hours from Cedar Sinai Medical Center, because he must be within a close proximity to the Cedar Sinai Medical Center if a suitable heart becomes available.  *Id.* at 2.

- 29 -

Plaintiff responds to these declarations arguing that Defendants have been aware of Fromberg's declining health for a substantial amount of time and have unreasonably delayed in their Motion to Transfer.   Plaintiff also argues that because Dr. Padilla never declares that "Mr. Fromberg could safely submit himself to the stress of attending trial <u>anywhere</u> . . ." that this suggests that even if the case were in California, Fromberg may not be able to attend. Pl.'s  Opp. to Defs.' Section 1404(a) Mot. to Change Venue at 7 (emphasis in original).  The Court is not convinced.  Dr. Padilla's declaration and concern with respect to Fromberg concerns Fromberg's ability to arrive quickly at Cedar Sinai Medical Center if a heart transplant becomes available.  While the Court agrees with Plaintiff with respect to the fact that Fromberg may be directed to refrain from testifying at trial and subjecting himself to cross-examination, this does not mean that Fromberg does not have the right to even be present at trial or other court proceedings.  Thus, the Court finds the convenience of the parties weighs in favor of transfer.  *See, e.g.*, *Sassy, Inc. v. Berry*, 406 F.Supp.2d. 874, 876 (N.D. Ill. 2005) (transferring a case pursuant to Section 1404(a), in part because the defendant suffered from health problems and was advised by his physician not to travel).

### 2.  *Public Interests*

The public interests inquiry under Section 1404 addresses the interest of justice and includes:  "(1) the speed of the proceeding; (2) the Court's familiarity with applicable law; and (3) the relation

of the community to the occurrence and the desirability of resolving the controversy in its locale." *Aramark Mgmt. Services*, 2003 WL 21476091 at *2 citing *Amoco Oil Corp. v. Mobil Oil Corp.*, 90 F.Supp.2d 958, 963 (N.D. Ill. 2000).

With respect to the first factor, the interests weigh slightly toward transfer. According to the Statistical Table for the Federal Judiciary, provided by Defendants, the Central District of California will provide a speedier path to trial - 19.9 months to this district's 26.3 months.

With respect to the second factor, Plaintiff argues that Illinois is the appropriate forum because the Illinois law – namely, the IFDA – will govern the proceeding. Plaintiff also claims that the IFDA is not a basic or well-established law and argues that because there is little case law interpreting the IFDA, a court sitting in Illinois is better equipped to adjudicate its claims. While the Court agrees with Plaintiff that this factor tips in favor of retaining the case, the Court reminds Plaintiff that "courts in different districts are well-capable of interpreting and applying laws from other states." *Aramark Mgmt. Services L.P.,* 2003 WL 21476091 at *4. *See*, *e.g.*, *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 391 (7th Cir. 2003) (interpreting and applying, among other things, Maine's franchise law). Moreover, when considering that Defendants have filed a counterclaim against Plaintiff alleging breach of contract, which was executed in California and which will be governed by California contract law, the

- 31 -

Court finds this factor does not significantly weigh in favor or either transfer or retention.

The final public interest factor to be considered is a community's desire to resolve the dispute in its locale. Here, the Court finds that if Plaintiff can eventually establish that a franchise agreement between the parties existed, then it is possible that this factor could weigh in favor of adjudicating the case in the Northern District of Illinois. However, the Court cannot deny that California also has an interest in this matter, as execution of the Agreement between the parties occurred in California, and California has an interest in interpreting its own contracts. Furthermore, both UMI and Fromberg are members of the community in the Central District of California.

Based on all of the above considerations, the Court grants Defendants' Motion to Transfer. The Court declines to sever the claims against UMI and Fromberg as Plaintiff alternatively requests. The Court finds that because the claims against UMI and Fromberg are necessarily related, in the interests of judicial economy, severance is inappropriate. *See In re High Fructose Corn Syrup Antitrust Litig.*, 293 F.Supp.2d 854, 862 (C.D. Ill. 2003) (noting that when determining whether severance is appropriate the Court should consider: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided

if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims").

### III.  CONCLUSION

For the reasons stated herein, the Court rules as follows:

1.   Grants in part and denies in part UMI's Motion to Dismiss and/or Strike [Dkt. 8];

2.   Grants Defendants' Motion to file a Surreply [Dkt. 39];

3.   Denies Plaintiff's Motion for Summary Judgment [Dkt. 15]; and

4.   Grants Defendants' Motion to Transfer [Dkt. 34].


**IT IS SO ORDERED.**


_____
         Harry D. Leinenweber, Judge
         United States District Court

**DATE:** 12/28/2012

- 33 -